CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

August 27, 2024

LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILLIAM LEE ANDERSON, II, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:22cv612 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| DR. LAURANCE S. C. WANG, | ) | By: Robert S. Ballou |
|     Defendants. | ) | United States District Judge |

William Lee Anderson, II, (hereafter "Anderson") a Virginia inmate proceeding *pro se*, has filed a Complaint (ECF No. 1, supplemented by ECF Nos. 4–5) against defendant Wang under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. Anderson originally filed a Motion for Summary Judgment (ECF No. 29), which at Anderson's request (ECF No. 37), was dismissed without prejudice (ECF No. 54). In the meantime, Dr. Wang filed a Cross-Motion for Summary Judgment (ECF No. 52). Anderson submitted an Affidavit (ECF No. 61) in opposition to Wang's motion, which is now ripe for adjudication. For the reasons stated below, I will deny Dr. Wang's motion.

## I. Background

On December 24, 2021, Anderson, an inmate at Green Rock Correctional Center, began vomiting. By Monday, December 27, 2021, he alleges in his verified complaint that he presented to the medical area doubled over in severe pain and complaining of fever, night sweats, cold chills, vomiting, and diarrhea with blood. He states that his temperature was 103° at 9:15 a.m. when he went to medical. (Anderson Aff't in Resp. to Mot for SJ, hereafter "Anderson Aff't," ECF No. 62.) In contrast, Nurse Jacobs documented that at 13:05 (1:05 p.m.) Anderson complained of nausea and vomiting for two days and was tearful. She noted hyperactive bowel sounds and tenderness in all quadrants, worse on release. She also documented vital signs,

including temperature of 98.9°, pulse at 120, and blood pressure of 148/85. She sent him to Gretna Urgent Care. (VDOC Health Services Form, Medical Records att. to Wang's Br. in Supp. Mot. For SJ, hereafter "Wang Ex. 2,") ECF No. 53-2 at p. 10.) Anderson says that Nurse Betterton, concerned about his temperature, directed Jacobs that morning to call Dr. Wang, who directed Jacobs on the speaker phone to send Anderson to the Urgent Care. He further stated that nurses are required to get authorization from Dr. Wang before sending a patient for outside treatment. (Anderson Aff't.)

Anderson was transferred from the Urgent Care to Lynchburg General Hospital (hereafter "LGH") after a CT scan revealed diffuse colitis, a small gallstone, and possible appendicitis. At LGH, Anderson was evaluated for surgery because of the possible appendicitis. The consulting surgeon concluded that Anderson had an inflamed appendix because of colitis. (Surgical Consult, LGH Recs at 39,[1] Wang Ex. 2 at 8.) Anderson was started on I.V. Cipro (an antibiotic), fluids for dehydration, Zofran for nausea, and fentanyl for pain. The treating physician at the hospital was concerned that Anderson's colitis could be caused by C. difficile infection, because Anderson had been on antibiotics for his chronic sinus infection shortly before his abdominal symptoms developed. He ordered stool cultures and switched Anderson to I.V. Flagyl and ceftriaxone, along with Zofran. The jail medical records contain a note from Nurse Cobbs, dated December 27, 2021, at 13:00 (1:00 p.m.) that she had just gotten off the phone with a nurse at LGH who advised her that Anderson was stable and being treated for colitis with I.V. antibiotics. Test results for C. Diff were not back yet. (Wang Ex. 2 at 10.) From December 28 through December 30, Anderson was administered I.V. Flagyl and ceftriaxone every six hours

---

[1] Only some of the LGH records have been filed with the court. Dr. Wang's Exhibit 2, medical records, consists of 17 pages. The LGH records are numbered out of 55, but the complete set of records has not been provided to the court.

2

and morphine as needed for pain. (Meds incorporated with Compl., LGH Recs at 12, ECF No. 4-1, p. 4.)

Anderson's C. Diff PCR (a screening test for the presence of bacteria that cause C. difficile) was positive, followed by a confirmatory test that was interpreted indeterminate. The chart notes that "For **indeterminate results please know** that 50% of these cases may have true C difficile infection and 50% may be colonized. Appropriate clinical correlation with the patient's history, risk factors is needed to make an accurate diagnosis." (*Id.*, LGH Recs at 53, ECF No.4-1, p. 8.) LGH records note that Anderson was improving on the Flagyl, and though the presence of C. difficile was indeterminate, the doctors felt he should complete a 14-day course of Flagyl. (*Id.*, LGH Recs at 29, ECF No. 4-1, p. 5.) The discharge diagnoses were Sepsis secondary to colitis, acute colitis, C. difficile indeterminate, dehydration, and vitamin D deficiency. *Id.* The patient instruction form advised Anderson to take only the medications listed below and to contact his doctor prior to stopping any medications on the list. The listed medications were amitriptyline (i.e., Elavil), Flagyl, and Zanaflex. He had already been on the amitriptyline and Zanaflex before coming to the hospital, and he was issued a prescription for Flagyl for the 11 days remaining in his 14-day course, to be taken every eight hours. (Wang Ex. 2 at 9.)

Anderson returned to Green Rock on the evening of December 30, 2021, and was evaluated by V. Pickeral, the nurse on duty. She noted the discharge instructions from LGH, including the medication recommendations. (Wang Aff't, ECF No. 53-1, ¶ 24.) Wang notes that the discharge notes recommended *completing* treatment with Flagyl for a total of 14 days. *Id.* at ¶ 21 (emphasis added). On January 2, 2022, Anderson submitted an inmate request, noting that he needed the medication the hospital ordered for C. diff. The response, dated January 3, 2022,

was a stamp that said, "Doctor will review your chart and renew medications or schedule you to be seen." (Pl. Ex. G, ECF No. 1-2 at 29.) Anderson's complaint alleges that his symptoms returned full force by January 3, 2022. On January 4, 2022, he submitted another inmate request, stating "the doctors gave me meds for this God awful painful infection in my stomach that I have yet to receive since coming back . . ." (Pl. Ex. I, ECF No. 1-2 at 30.) He further stated that the infection almost killed him and "it's not over yet." *Id.* The response was, "You are scheduled to see the doctor." Anderson submitted a complaint on January 8, stating that he had not yet received his Zanaflex, which he needed for his stomach pain, and that he believed this was retaliation by Wang for Anderson's complaints against Wang. (Pl. Ex. J, ECF No. 1-2 at 31.) Nurse Cobbs replied on January 10 that "Zanaflex is a muscle relaxant. It is not for your stomach." (Pl. Ex. K, ECF No. 1-2, p. 32.) On February 2, 2022, in response to another complaint regarding being deprived of his Zanaflex, Nurse Cobbs stated that Dr. Wang reordered the Zanaflex on January 7. (Pl. Ex. C, ECF No. 1-2 at 20.)

    Contrary to the section "Statement of Undisputed Material Facts" in Wang's Brief in Support of his Motion for Summary Judgment (ECF No. 53), the events of January 5, 6, and 7, are sharply contested by the parties, and Anderson has provided far more than conclusory allegations. Wang states that he saw Anderson in medical on January 5, 2022, and that Anderson's only complaint was weakness. Wang states he ordered refills for Anderson's regular prescriptions (Zanaflex, Pepto Bismol, Elavil, CTM, Claritin, Colace, and Naprosyn) at that time. (Wang Aff't, ¶ 26.) Anderson states that he did not see Wang—or anyone in medical—until January 6, and that he had been having nausea, vomiting, diarrhea, and pain since January 3, when the symptoms came back full force. Anderson told Wang that Zanaflex, that he had been on already for his shoulder, provided some relief from his stomach pain. The medical notes

4

reflect that Wang prescribed Flagyl and Zofran on January 6. Wang states that Anderson told him on January 5 that he had received no medicine since returning from the hospital. (Wang Aff't, ¶ 26.) Anderson states that he was told on January 6 he would be given antibiotics and something for pain and then Wang placed him in a medical holding cell, where he did not see anyone (or receive any medication) until he was escorted back to medical by a corrections officer at 9:30 a.m. on January 7. (Anderson Aff't, pp. 2-3; Am. Compl., p. 5.) Wang disputes placing Anderson in a holding cell. (Wang Aff't, ¶ 32.) Anderson also disputes the condition he was in when seen on January 6, stating that his weight was down to 171 pounds, and he had a temperature of 101°, contrary to Wang's claim that his temperature was 97.7. (Anderson Aff't, ¶ 5; Wang Aff't, ¶ 27.)

Wang reports that Anderson was feeling "100% better" on the morning of January 7, with no complaints of pain, nausea, or vomiting and a temperature of 98.4 and weight of 176. (Wang Aff't, ¶¶ 28-29.) Anderson succinctly calls that statement a "monumental lie" (Anderson Aff't, ¶ 8), and alleges that he had soiled his pants from diarrhea during the overnight in the holding cell. Wang states that Anderson was not started on Flagyl until the afternoon of January 7, due to unavailability, but once started, he remained on the medicine through January 19. (Wang Aff't, ¶ 31.) Anderson's complaint also notes that he received the Flagyl for the first time on January 7, 2022, at 6:00 p.m., more than a week after his discharge from Centra Hospital.

Medication administration records from the jail show that Flagyl was administered at 4:00 p.m. on January 6 and at 6:00 a.m., noon, and 4:00 p.m. on January 7 and every day thereafter through noon on January 19 (except noon on January 8, 9, and 10). (Wang Ex. 2 at 15-16.) However, the attached Medication Administration Notes have several entries on January 7, including a note entered at 7:30 and 7:32 p.m. stating "Late entry for 1/6/22 entered in error.

5

Medication unavailable on 1/6/22" and two at 7:26 a.m. reading "Med not here, charted given in error" and "Medication has not arrived." *Id.* at 17. On January 8 and 9, Cindy Wyatt noted that Anderson was not present for one dose on each date; Betterton noted on January 11 that she instructed Anderson to come every day at noon because he had been missing his noon doses; he told her he did not realize he had a noon dose to receive. *Id.* He received his noon dose on time every day thereafter. Significantly, medication records do not reflect that any Zanaflex was dispensed to Anderson until the afternoon of January 20, 2022. (Wang Ex. 2 at 16.)

## II. Discussion

### A. Liability

A court may grant summary judgment only "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if the evidence presented would allow the nonmoving party to prevail at trial. *Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir. 2024). To decide whether a genuine dispute exists, the court must view all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Id.*

The parties agree that Anderson was sent to Urgent Care on December 27, 2021, and was transferred to LGH, where he remained until December 30, 2021, receiving I.V. antibiotics (particularly, Flagyl) to treat a case of acute colitis which had become septic. He improved while being treated, and the hospital discharged him with instructions to finish the course of antibiotic therapy by taking Flagyl orally for another 11 days. It is also undisputed that Anderson did not receive any Flagyl till the afternoon of January 7, a full eight days after his discharge from the hospital to the prison. Nor does Wang dispute that Anderson sent requests for the hospital-prescribed medicine on January 2 and January 4. These facts alone could support a finding of

deliberate indifference if a factfinder concludes that Anderson's symptoms returned in full force by January 3, 2021, as Anderson alleges, and that he remained in pain until he received the prescribed antibiotic therapy. *Murrell v. Bennett*, 615 F.2d 306, 308–09 (5th Cir. 1980) (finding that plaintiff's allegation that he did not receive prescribed medication for six days after his return from the hospital created a genuine issue of material fact, sufficient to withstand summary judgment, despite defendants' contrary evidence); *Boretti v. Wiscomb*, 930 F.2d 1150, 1154 (6th Cir. 1991) (finding failure to provide pain medication for five days sufficient for inference of deliberate indifference; it "took one phone call to [the other institution] to confirm that motrin had been prescribed for pain."); *Aswegan v. Bruhl*, 965 F.2d 676, 678 (8th Cir. 1992) (holding that refusal to ensure that inmate received antibiotics prescribed by a specialist is sufficient to support finding of deliberate indifference); *Washington v. Dugger*, 860 F.2d 1018, 1020 (11th Cir. 1988) (holding that frequent failure to have prescribed medication available for daily soaks—one time unavailable for five days—sufficient for factfinder to find deliberate indifference).

      The parties disagree about other facts, some of which are material. The material disagreements concern what happened after Anderson returned to Green Rock, particularly when his symptoms returned, when he was first seen by Dr. Wang, his physical condition when Wang saw him (including his temperature and weight), and whether Wang placed him in a holding cell overnight on January 6. There are also questions regarding when the Zanaflex was renewed for Anderson and why there was a delay of more than one week in continuing his antibiotic treatment and three weeks in receiving a prescription that he had already been on before his hospitalization. If a jury resolves these questions in Anderson's favor, the inference of deliberate indifference is even stronger than that created by the undisputed facts discussed in the previous paragraph.

### B. Immunity

To the extent that Anderson seeks judgment against Wang in his official capacity, Wang is entitled to Eleventh Amendment immunity. Claims against defendants in their official capacities are not cognizable in § 1983 lawsuits because neither the state nor its officials acting in their official capacities are persons for purposes of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The claim against Wang in his official capacity will be dismissed.

Dr. Wang is not entitled to qualified immunity on the claim against him in his individual capacity. For the reasons discussed previously, there are genuine issues of material fact which, if resolved in favor of the plaintiff, would support a finding of deliberate indifference. The law has been clearly established for decades that one violates a prisoner's Eighth Amendment rights by causing harm to the prisoner through deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### III. CONCLUSION

Because there are factual disputes and different inferences that can be drawn from the facts, this matter is not appropriate for summary judgment. Wang's Motion for Summary Judgment (ECF No. 52) will be denied, except to claims against him in his official capacity.

An appropriate order will be entered this date.

Enter: August 27, 2024

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge