CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

October 30, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM LEE ANDERSON, II, ) | |
|     Plaintiff, ) | Civil Action No. 7:22cv00612 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| DR. LAURENCE SHU-CHUNG WANG, ) | Robert S. Ballou |
|     Defendant. ) | United States District Judge |

Following entry of judgment on May 2, 2025, on a jury verdict in favor of the defendant, plaintiff William Lee Anderson, II, a Virginia inmate proceeding *pro se*, timely filed a Motion for New Trial, pursuant to FED. R. CIV. P. 59. The defendant has filed a response, and this matter is ripe for decision. For the reasons stated below, I will deny the motion.

When determining whether to grant a new trial following a jury trial, a district court must consider (1) whether the jury's decision is against the clear weight of the evidence; (2) whether the decision is based upon evidence which is false; and (3) whether the verdict will result in a miscarriage of justice. *King v. McMillan*, 594 F.3d 301, 314 (4th Cir. 2010). I will address each of these considerations.

To determine whether the jury's decision is against the clear weight of the evidence, a summary of the relevant evidence is necessary. Plaintiff Anderson testified that he started vomiting on Christmas day in 2021 and that he had diarrhea six times an hour. He went to the medical department at Green Rock Correctional Center on Monday, December 27, 2021, because he was not any better. The nurse on duty sent him to Gretna Urgent care, where a CT scan showed evidence of sepsis. He was then transferred to Lynchburg General Hospital because the Urgent Care did not have the kind of laboratory and other equipment that a full hospital would have, according to Nurse Cynthia Cook, who was the charge nurse at Gretna Urgent Care when

Anderson was admitted. Nurse Cook, called as a witness by plaintiff, testified that Anderson was not a priority transport to the hospital.

Anderson testified that while at the hospital, he received IV antibiotics and pain medication. He also introduced his medical records into evidence, previously marked as D9. These records from Lynchburg General Hospital indicated that he was evaluated for possible surgery as the doctors tried to determine whether he had appendicitis or colitis. A screening test was positive for C. difficile, a bacterial infection associated with colitis, but the follow-up test was negative. The doctors placed him on two IV antibiotics, Ceftriaxone and Flagyl, and noted improvement in his condition. He was discharged on December 30, with diagnoses of sepsis (resolved) secondary to colitis, acute colitis of unknown etiology and indeterminate C. difficile, dehydration (resolved), and vitamin D deficiency. The discharge summary noted that Anderson needed to complete treatment with Flagyl for a total of 14 days. A prescription for oral Flagyl was provided, with directions that he should take the medicine every 8 hours for 11 days to complete the treatment started with IV for three days. The discharge summary also noted that he should continue taking amitriptyline (a tricyclic antidepressant that helps a patient sleep) at bedtime and should take Zanaflex (a pain blocker and anti-spasmatic medication) two times per day.

Anderson returned to Green Rock on the evening of December 30, 2021, and the discharge instructions and prescriptions were turned over to V. Pickeral, who noted the date and time (22:30), followed by her signature, next to the prescription order for Flagyl. Anderson testified that he still had some diarrhea and was weak, but he felt better than he had before going to the hospital. He did not want anything to eat, because food still made him nauseous. Over the next few days, he filed complaints and grievances that he had not been given his medication

2

since he returned from the hospital, and his symptoms had returned full force. He finally saw the defendant, Dr. Wang, on January 6, 2022, and asked why he had not received his medication. He testified that he was doubled over in pain when he saw Dr. Wang, and that Wang placed him in the medical holding cell, where he was left overnight with no medical attention. While in there, he had diarrhea, with no access to a toilet, and had to wash himself from the sink because that was all that was available. He was released from the medical holding cell on January 7, 2022, at 9:30 in the morning and received his first dose of Flagyl that evening at 6:30 p.m. He did not get his pain medication until January 22.

Anderson called Nurse Cobbs, now retired from Green Rock. Having been a nurse since the 1970s, she started work at Green Rock in 2007 when it opened. She was the clinical nursing supervisor, responsible for scheduling, performance evaluations, etc. She described the medical procedure for inmates at Green Rock. Inmates submit a sick call request with a complaint describing their symptoms and are scheduled for sick call. A nurse would examine and assess the patient at sick call; if the nurse thought the patient needed to be seen by the doctor, the nurse arranged the appointment. Dr. Wang did not see or review sick call requests.

Nurse Jacobs, called by Plaintiff Anderson as a witness, reviewed the Green Rock medical records because she did not have an independent memory of the events three years before. She testified that Anderson's weight on December 30, when he returned from the hospital, was 185 pounds. On January 7, his weight was 176 pounds. She testified that she received a verbal order from the doctor for Flagyl on January 6. She also acknowledged that a mark in the Green Rock medical chart margin on December 30, beside the notation of the need for Flagyl, looked like it could be Dr. Wang's initials.

Dr. Wang testified as an adverse witness.  He had been employed by the Department of Corrections as a physician since 2002 and had been the physician at Green Rock since 2007.  At the time Anderson became ill, Wang testified that he was on vacation, and did not return to Green Rock until January 5, 2022.  Before his return, he did not know that Flagyl had been prescribed for Anderson on release from the hospital.  He noted that protocol was for a nurse to call him if a prescription was needed, so that he could order it; he did not receive any phone call about the Flagyl, to the best of his memory.  He testified that he saw Anderson on January 5, 2022.  Anderson said that he still felt a little weak and said that he had not received any medication since returning from the hospital.  Dr. Wang recorded Anderson's vital signs, including blood pressure of 138/90 and weight of 182 pounds. He ordered refills of Anderson's regular medications for his pre-existing conditions unrelated to the hospitalization.  Because Anderson was doing well, Dr. Wang did not think on January 5 that Flagyl was necessary and did not order it that day.

Although Dr. Wang had previously denied seeing Anderson or placing him in the medical holding cell on January 6, at trial he testified that he must have had a conversation with Nurse Jacobs on January 6 about Anderson's condition that day and probably agreed that the medical cell was an appropriate placement based on Anderson's condition when Nurse Jacobs examined him on January 6 for complaints of nausea, vomiting, and diarrhea.  He also noted that he authorized the prescriptions (Flagyl and the pain medication) on January 6 when he talked to Nurse Jacobs.  In the prison, medications are normally ordered from the contract company, Sapphire, in Pennsylvania.  He assumed the Flagyl had been ordered from Sapphire, as Anderson did not receive a dose until January 7.  He did not know why it took nearly 20 days for the pain

4

medication to arrive. Further, he did not consider Anderson's weight loss from 182 to 176 pounds between January 5 and January 7 to be significant.

Nurse Mayes testified as a defense witness. She had worked for the Department of Corrections since 2001. In 2021-2022, she was the director of nursing at Green Rock, overseeing the department and nursing staff. Her role was administrative. Mayes supervised Nurse Cobbs, who supervised the nurses and CNAs clinically. Mayes supervised Dr. Wang administratively, but not clinically. Dr. Wang had no supervisory authority over the nurses and no authority to discipline them. Dr. Wang, as the physician, was the only person who could order a prescription for an inmate. The proper protocol was that Pickeral should have notified Dr. Wang on December 30 when Anderson had a prescription upon his return from the hospital. She should have then noted the phone call in the chart and whether he had verbally ordered the medication. Because there are no such notes in the chart, it appeared to her that Dr. Wang had not been notified. Without such a phone call, Dr. Wang would have no way to know about the prescription until he returned to Green Rock on January 5.

Finally, Dr. Wang called Dr. Mark Landrum, an infectious disease physician from Johns Hopkins Regional Physicians, as an expert defense witness. Dr. Landrum had been Board-Certified in infectious disease since 2003. He had also done legal consulting in cases for 15 years, reviewing cases usually about 15 times per year. He had testified as an expert witness eight times before but had given about six depositions per year as an expert. His fees for case review and testimony were $500 per hour or $5,000 per day.

Based upon his training, experience, and review of the medical records from Green Rock and from Lynchburg General Hospital, Dr. Landrum testified that Anderson did not have C. difficile and that there was no reason to keep Anderson on Flagyl after his discharge from the

hospital. Further, Anderson's recurring symptoms for the single day of January 6 were not caused by the cessation of Flagyl after December 30, and remaining on Flagyl would not have prevented return of the symptoms, because colitis is inflammation caused by an over-enthusiastic immune system.

Dr. Landrum explained that frequent watery diarrhea is associated with C. difficile, but nausea and vomiting are not symptoms of C. difficile. Anderson's symptoms could be explained by any number of viruses or bacteria or by food poisoning. The hospital ran tests to try to identify the cause of the infection to prescribe the best treatment. The lab report showed the presence of C. difficile bacteria in his system, but all kinds of bacteria are usually present in the gastro-intestinal tract. The bacteria are problematic when they produce a toxin that destroys the colon lining. That toxin was not found in Anderson's lab work. The third test used by doctors is a genetic test to see if a patient has a predisposition to having a toxic C. difficile infection. Anderson did have the genetic predisposition. However, without the toxin that causes destruction of the colon lining, it was Dr. Landrum's opinion that Anderson did not have such an infection. Because he did not have the infection, there was no reason to keep him on Flagyl upon his discharge from the hospital.

Dr. Landrum emphasized that Anderson received two IV antibiotics in the hospital, Flagyl and Ceftriaxone. While Flagyl targets nonaerobic bacteria like C. difficile, the other antibiotic was used to treat a broad range of infections. During his hospital stay, Anderson's white blood cell count came down, he had only four bowel movements on December 29, and none noted on December 30, and he was stable at discharge. Dr. Landrum said that the combination of the two antibiotics may have brought whatever the infection was under control or, more likely, that the infection was viral and had run its course.

When faced with conflicting evidence and conflicting inferences that can be drawn from the evidence, a district court must "treat a jury's verdict with great deference and respect." *Stebbins v. Clark*, 5 F. App'x 196, 202 (4th Cir. 2001).  The court does not decide whether it believes the evidence was more compelling for one side or the other, and the court cannot substitute its analysis of the evidence for the jury's.  The sole question the court may consider is whether the evidence supporting the jury's verdict for Dr. Wang "is impossible to believe or against the clear weight of the evidence." *Baucom v. DoALL Co.,* 844 F. App'x 602, 608 (4th Cir. 2021).  The testimony of one person, if believed, is sufficient to support a jury verdict. *Hicks v. Ferreyra*, 64 F.4th 156, 175 (4th Cir. 2023).  Although the testimony of Anderson and of Nurse Jacob, and inferences from medical records could have supported a verdict for Anderson, the question at this stage is whether the evidence could support the verdict for Dr. Wang.  Based on the testimony of Dr. Wang, Dr. Landrum, and Nurse Mayes, I cannot say that the jury's verdict is against the clear weight of the evidence.

Anderson argued in motions before trial that the medical records were falsified, but in the absence of any conclusive evidence, the differences in testimony between Anderson and Dr. Wang were credibility questions for the jury to resolve.  There is no "smoking gun" evidence to show that the verdict was based on false evidence, just two different versions of events, based on limited human memory and different inferences drawn from the facts.  Nor can I conclude that the verdict is a complete miscarriage of justice.

In support of his motion, Anderson argued that he has new evidence not available at trial, citing *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191 (4th Cir. 2006).  *Ingle* discussed the grounds for altering or amending a judgment, as in a summary judgment for example, which is different from setting aside a jury verdict.  Even accepting that new evidence *not available at*

7

*trial* might be grounds for setting aside a jury verdict in some cases, Anderson has not offered such evidence here. His new evidence is (1) that he received disciplinary charges the day before his trial, which charges came about because he was trying to confirm transportation to his court date, and officers used excessive force against him, and then brought the charges to justify the injuries inflicted and (2) the injuries he suffered when the officers assaulted him included a concussion and stroke the day before the jury trial.

The first problem with Anderson's argument is that neither of these proffered facts were "not available at trial." Anderson told the court the morning of trial that there had been a "scuffle" with officers the day before, but he said nothing about a concussion or that he thought he had a stroke. In his Affidavit in support of his motion, Anderson states that when he was placed in the RHU immediately after the scuffle, "I knew then I had another stroke." Dkt. No. 207, p. 3, ¶ 10. He also knew about the disciplinary charges before the May 1, 2025, trial date. He was given a penalty offer and signed a request to defer his decision to accept or decline for one working day, He signed it on April 30, 2025. He knew then about the charges and what had happened, so it is not evidence that was not available at trial.

Second, Anderson's proffered evidence has nothing to do with the factual dispute in his case, namely whether Dr. Wang was deliberately indifferent to his serious medical need. It would not be relevant or admissible at a new trial. It could not have affected the verdict because it could not be considered by the jury deciding the claim against Dr. Wang. To the extent he believes that officers injured him by using excessive force and by filing retaliatory grievances, those matters would have to be raised in a different suit against different defendants, not Dr. Wang.

Finally, to the extent Anderson is suggesting that his concussion or stroke impaired his ability to represent himself, he did not make any such allegation before the trial. He did not request a continuance. He did not say he felt physically unable or mentally impaired. Nor did he seem in any way impaired, other than by lacking training in the law. I repeatedly steered Anderson back to the subject at hand during his testimony and arguments because Anderson continued to testify and argue about events unrelated to the present suit against Dr. Wang. Anderson characterizes himself as "lost" and needing to be redirected, purportedly because of a concussion and stroke, but the issues Anderson digressed onto at trial were issues he had been repeatedly raising throughout the pre-trial litigation, long before the April 30 incident with the corrections officers. I say this not to be critical; *pro se* parties without legal training sometimes have a hard time understanding relevance concepts. Anderson did not have any speech defect, any impaired mobility, any apparent loss of memory about the facts of his case, or any other objective indication of the impairment he is now asserting.

For the reasons stated, I find that Anderson has failed to establish any grounds for a new trial, and I will deny his motion. An appropriate order will be entered this day.

Enter: October 29, 2025

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge

9